CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ZACHARY M. GLIMCHER (CABN 308053)
Special Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
Zachary.Glimcher@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO GABRIEL SAINZ,<br><br>Defendant. | NO. 4:25-CR-221-AMO<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: October 19, 2026<br>Time: 3:00 p.m.<br><br>Judge: Hon. Araceli Martínez-Olguín |

## INTRODUCTION

The defendant, Alejandro Sainz, under the guise and delusion that he was providing refuge, acted as a sexual predator, and his victims were teenage girls. Seeming to follow the same playbook, the defendant, in 2024 alone, met up with and engaged in sexual activity with five different minors. In October 2024, his conduct got federal attention after he recorded himself having sex with Minor Victim 1 ("MV1"). The defendant preyed upon particularly vulnerable members of an already vulnerable demographic in the community. Considering all of his known conduct, the government recommends the Court sentence him to 120 months in prison on Counts One and Two to run concurrently, followed by 10 years of supervised release.

## BACKGROUND

### A. Offense Conduct

October 11, 2024, leading up to his arrest and discovery the defendant was in possession of child pornography, MV1's mother contacted law enforcement to report her daughter was missing after finding a note saying MV1 had run away to Arizona and did not have a mobile phone. PSR ¶7. MV1's mother had her daughter's phone and was able to locate three numbers MV1 had recently been in contact with, one of which was saved under the name, "Alejandro SAI." *Id*. Law enforcement was able to determine the number saved under that contact was registered the defendant, that he and MV1 had recently met before at a mall in Stockton, California, and that the defendant resided in an apartment in Pleasant Hill, California. *Id*. at ¶8.

On October 21, 2024, when law enforcement entered the apartment complex parking lot, they observed a minor female and believed it to be MV1. *Id*. at ¶9. Later identified as Minor Victim 2 ("MV2"), she told police she was 15, knew the defendant, had just been in his apartment, and that MV1 was still in there with the defendant. *Id*. MV1 and MV2 were rescued, and it was determined that MV2, too, had been reported missing from Folsom, California. *Id*.

After the defendant was arrested, police conducted separate interviews with MV1 and MV2. *Id*. at ¶¶10-11. Both of them stated they had separately connected with the defendant online, MV2 through and app called Casual, and MV1 through and app called Pure. *Id*. These apps are designed for users 18

and older, so it is reasonable to think the defendant believed MV1 and MV2 were at least 18 when they connected. *Id*. However, both MV1 and MV2 stated they told the defendant they were underage, and both relayed that he knew but did not care. *Id*.

MV1 arrived at the defendant's apartment on October 11, and MV2 was already there at that time. *Id*. at ¶11. All three were there essentially the whole time until police arrested the defendant. *Id*. While there, the defendant had sex with each of them multiple times, MV1 stating the defendant had oral, vaginal, and anal with her and did not use a condom. *Id*. MV1 and MV2 also recalled the defendant making recordings while they had sexual intercourse, though only images of MV1 were recovered. *Id*. at ¶¶ 11-12.

Law enforcement extracted the data from the phone seized from the defendant's person at the time of his arrest. *Id*. at ¶12. They located evidence confirming it was his phone as well chats between the defendant and what were believed to be two additional minor females. *Id*. at ¶13-14. The first, Minor Victim 3 ("MV3"), connected with the defendant on an app called Down and interacted between May 12, 2024, and August 16, 2024, when she was 17. *Id*. The defendant Ubered MV3 to his residence several times and had sex with her each time. *Id*.

The second, Minor Victim 4 (MV4), exchanged text messages, with the defendant between July 30, 2024, and September 23, 2204, including MV4 asking, "You like younger girls?" and the defendant answered, "Sure." *Id*. at ¶13. The contact was saved in the defendant's phone, as "Virgin Slut," and his phone also contained record of him Ubering MV4 to his residence and having sex with her. *Id*.

Further investigation located a fifth minor victim who met the defendant through a "meetup" app that was designed for users 18 and older. *Id*. at ¶15. Based on the interview with her, it does not appear she ever told the defendant her true age (16 years old), but she stated the defendant Ubered her to his residence, and they engaged in sexual activity. *Id*.

Data recovered from the defendant's phone also included several videos and images of MV1 engaging in sexually explicit conduct sometimes by herself and sometime with the defendant. *Id*. at ¶12. The content of some of them include images of MV1 created on October 16, 2024, nude, kneeling on the floor with her wrists and neck bound with black leather or a red rope, and nipple clamps on each breast.

*Id*. Others depict MV1 and the defendant engaged in sexual intercourse, sometimes also depicting MV with an object inserted into her anus. *Id*. The defendant sent some of these videos and images he produced between two of his Facebook accounts. *Id*. at ¶¶16-19. In total, the defendant produced, possessed, and held on his Facebook accounts approximately 24 images and nine videos of MV1 engaging in sexually explicit conduct, either alone or involving the defendant. *Id*. at ¶19.

**B. Procedural History**

On July 31, 2025, a federal grand jury returned a two-count indictment charging the defendant with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B)**.** PSR ¶ 1.

On June 22, 2026, the defendant pled guilty to Counts One and Two in the Indictment via a written plea agreement. PSR ¶ 2. Sentencing is currently scheduled before this Court for October 19, 2026. *Id.*

## DISCUSSION

**A. Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. Sentencing Guidelines Calculation**

As set forth in the Plea Agreement, the Sentencing Guidelines calculation for the defendant's offense level is as follows:

| | |
|---|---|
| **BASE OFFENSE LEVEL** (U.S.S.G. §§ 2G2.1(a) & 2G2.2(c)(1)) | 32 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| The offense involved a involved a minor who had attained the age of twelve years but not attained the age of sixteen years (U.S.S.G. §2G2.1(b)(1)(B)) | +2 |
| The offense involved the commission of a sexual act or sexual contact §2G2.1(b)(2)(A) | +2 |
| The offense involved material that portrays sadistic or masochistic conduct (U.S.S.G. § §2G2.1(b)(4)(A) | +4 |
| **Adjusted Offense Level** | 40 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| **Total Adjusted Offense Level** | 37 |

The Government agrees with the PSR that the defendant's Criminal History Category (CHC) is I. PSR ¶42. With a total offense level of 37 and a CHC I, the Guideline range associated is 210-262 months. The Government agrees that this range is supported by the facts of the case; however, for reasons explained below, the government recommends a custodial sentence of 120 months, in concurrence with the terms of the Plea Agreement.

**C. The Government Recommends 120 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a **custodial sentence of 120 months** to be followed by a 10-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offenses, to provide just

punishment and protect the community, and to account for the significant aggravating factors present in this case.

In 2024, the defendant focused his sexual attention and satisfaction of his sexual desires on teenage girls, a demographic that is vulnerable and impressionable. The nature, circumstances, and seriousness of the offense are demonstrated by the fact that when he was arrested, the defendant had two minors in his apartment for more than a week, and both of whom had been reported missing. In addition to harboring them, he was regularly having sex with them. From his exploits, the defendant filmed himself having sex with MV1, as well as staging her in degrading, humiliating, and sadistic ways.

The history and characteristics of the defendant are that of someone who's childhood and upbringing warrant some sympathy. The history and characteristics are also of someone who was methodical in facilitating satisfaction of his sexual appetite with minors. In the same year, he targeted at least five minor girls, Ubered each of them to his residence, and had sex with.

The recommended sentence also affords a deterrent effect, both generally to individuals contemplating child exploitation, and specifically to this defendant. Teenage girls are particularly vulnerable members of our society, in the throes of physical, psychological, emotional, epistemological, and sexual development. Society has guardrails to protect children from making decisions they will later regret and need to heal from, and it is individuals in this vulnerable, unstable, and susceptible state the defendant decided to target.

The first prison sentence the defendant has ever received being ten years sends a message to him and the general population that there is no justification and no tolerance for this type of behavior. The recommended 120 months in custody is sufficient and no greater than necessary.

//

//

//

//

//

//

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to a sentence of **120 months of imprisonment,** to be followed by 10 years of supervised release.

DATED: October 9, 2026

*/s/*
ZACHARY M. GLIMCHER
Special Assistant United States Attorney